Greg THRASHER, Plaintiff,

v.

**GRIP–TITE MANUFACTURING COMPANY, INC., now known as Grip–Tite Manufacturing Co., LLC, Defendant.**

No. 4:07–cv–00551–JEG.

United States District Court,
S.D. Iowa,
Central Division.

Feb. 4, 2008.

Steven D. Davidson, Baird Holm McEachen Pedersen, Hamann & Strasheim, Omaha, NE, for Plaintiff.

Debra Lynne Hulett, Thomas W. Foley, Nyemaster Goode West Hansell & O'Brien, PC, Des Moines, IA, for Defendant.

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on the motion of Plaintiff Greg Thrasher (Thrasher) for preliminary injunctive relief against Defendant Grip–Tite Manufacturing Co. (Grip–Tite). Steven Davidson represents Thrasher, and Grip–Tite is represented by Thomas Foley and Debra Hulett. The matter came on for hearing on January 17, 2008, and is now fully submitted and ready for ruling.

### SUMMARY OF MATERIAL FACTS

Thrasher owns and operates Thrasher Basement Systems, Inc. (TBSI), a Nebraska corporation engaged in the business of foundation repair and home waterproofing. Grip–Tite is an Iowa company that manufactures a wall anchor system used to repair foundations. Grip–Tite's corporate headquarters and production facility are located in Winterset, Iowa, where Grip–Tite or its predecessor entities have produced foundation repair products since the 1920s.

Thrasher has purchased foundation repair materials from Grip–Tite since 1986. In 1991, Thrasher became a licensed Grip–Tite dealer pursuant to a Dealer Licensing Agreement. With service of this lawsuit, Thrasher has given notice to Grip–Tite of the termination of the Dealer Licensing Agreement at the conclusion of its current term, on December 24, 2007. While pertinent to the background circumstances, the Dealer Licensing Agreement does not include a post-termination non-compete clause and is not part of the current dispute.

In May 1998, the parties entered into a second agreement between Grip–Tite and Thrasher individually, the Development Agreement, whereby Thrasher would develop new Grip–Tite dealerships in return for a commission. Under this agreement, Thrasher agreed to solicit prospective Grip–Tite dealers, provide training and technical support to those dealers, collect product orders, host an annual dealer meeting, and attend conventions. The Development Agreement automatically renews in one-year successive terms unless one party provides written notice of intent to terminate ninety days prior to the end of the initial or any renewed term. Thrasher has notified Grip–Tite he intends to terminate the Development Agreement at the conclusion of the current term, which expires April 30, 2008. Since the inception of the agreement, Thrasher contends he has developed sixty-eight dealers in thirty states and five Canadian provinces.

The Development Agreement contains a non-compete clause, which provides as follows:

9. NON–COMPETE. Thrasher agrees that he will not, at any location within the United States or Canada, during the term of this Agreement or for a period of two (2) years after termination of this Agreement ... directly or indirectly: (I) act as a sales representative, dealer or distributor for, or offer for sale any items of a nature similar to, or competitive with, the Product; (ii) act as an advisor or consultant to any person or firm engaged in the business of manufacturing or distributing items of a nature similar to, or competitive with, the Product; or (iii) hold or maintain any financial or ownership interest in any

person or firm engaged in the business of manufacturing or distributing items of a nature similar to, or competitive with, the Product. Thrasher acknowledges that the restrictions against competition set forth herein are fair and reasonable restrictions that provide necessary protection of Grip–Tite's business interests. In the event any court of competent jurisdiction makes a final determination at that time period set forth in this Section 9 is excessive, or that the restrictions should be confined to a more limited geographic area, and said court makes a determination as to a reasonable time period or geographic area, the parties hereto agree that for purposes of this Agreement, the period of time and/or geographic area shall be that which has been determined to be reasonable by such court.

Thus, the agreement contains restrictive provisions both "during the term of [the] agreement" and upon termination.

The agreement also contains a choice of law provision stating that it "shall be construed and governed in accordance with the laws of the State of Iowa." Thrasher contends the non-compete clause in the Development Agreement will unduly restrict his business activities upon termination of the agreement, and he is presently unable to plan for the continuation of his business interests after April 30, 2008.

On September 5, 2007, Thrasher filed suit in Douglas County, Nebraska. Grip–Tite subsequently removed the case to the U.S. District Court for the District of Nebraska based on 28 U.S.C. § 1332, as the parties are of diverse citizenship, and the amount in controversy exceeds $75,000. Thrasher requests a declaratory judgment that the non-compete clause in the Development Agreement is unenforceable. Additionally, Thrasher asked the Nebraska court to impose a temporary restraining order and preliminary injunction prohibit-ing Grip–Tite from enforcing the non-compete clause. Thrasher withdrew his request for a TRO after Grip–Tite agreed not to pursue a separate legal action in Iowa. Instead, Grip–Tite moved for dismissal or change of venue. On November 21, 2007, the U.S. District Court in Nebraska (Hon. Laurie Smith Camp) found the forum selection clause enforceable and mandatory and denied Grip–Tite's motion to dismiss but granted the request to transfer the case to the Southern District of Iowa. The case was then transferred to this Court on December 6, 2007.

With the parties' agreement as to the TRO, that matter is resolved, and the Motion for Preliminary Injunction remains submitted and pending before this Court. The Court previously denied Grip–Tite's motion for an evidentiary hearing on the matter, which Thrasher had opposed (Clerk's No. 33). Therefore, the Court now considers the Motion for Preliminary Injunction based upon the record received by our sister court in Nebraska as further illuminated by the January 17, 2008, hearing before this Court.

## APPLICABLE LAW AND DISCUSSION

### I. Preliminary Injunction

 "[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems*, Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir.2006).

The district court has broad discretion when making that determination; however, the burden is upon the movant to demonstrate the necessity of injunctive relief per the *Dataphase* factors. *Id.*

## A. Thrasher's likelihood of success on the merits.

For the purposes of discussion under the unique circumstances of this case, the Court will reorder the consideration of the *Dataphase* factors, first addressing the likelihood of success on the merits.

■ The parties disagree as to the appropriate state law under which the Court must interpret the validity of the non-compete clause. Grip–Tite urges the Court to apply Iowa law, as provided in the agreement's choice of law provision, while Thrasher argues application of Nebraska law is required. "A district court sitting in diversity jurisdiction applies the conflict of law rules for the state in which it sits." *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir.2006). Accordingly, this Court applies Iowa law; however, as the Nebraska District Court noted, Iowa and Nebraska apply the same conflict of law analysis based on the Restatement (Second) of Conflicts of Laws. *Compare Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) ("We think it is clear that choice-of-law questions are now to be determined under the Restatement (Second) test."), and *Bendzak v. Midland Nat'l Life Ins. Co.*, 440 F.Supp.2d 970, 983 (S.D.Iowa 2006) (same), with *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir.2001) ("In deciding choice-of-law questions, Nebraska follows the Restatement (Second) of Conflicts of Laws.") (citing *Harper v. Silva*, 224 Neb. 645, 399 N.W.2d 826, 828 (1987)). The parties have provided analysis as to the application of Restatement sections 187, 188, and 196, as well as discussion of the attendant issues of each state's contacts regarding the negotiation and execution of the agreement and the competing public policies. This dispute need not be resolved in order to rule on the pending motion, however, because the Court finds Thrasher has demonstrated a likelihood of success on the merits under either Iowa or Nebraska law.

■ Under Nebraska law, "[t]o determine whether a covenant not to compete is valid, a court must determine whether a restriction is reasonable in the sense that it is not injurious to the public, that it is not greater than is reasonably necessary to protect the employer in some legitimate interest, and that it is not unduly harsh and oppressive on the employee." *Prof'l Bus. Servs. Co. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176, 183–84 (Neb.2004). Thus, a non-compete clause "which is aimed at preventing a former employee from unfairly appropriating the customer goodwill which properly belongs to the employer" is not valid unless "it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact." *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751, 756 (1987). In addition, if the challenged non-compete provision fails to meet this standard, a Nebraska court is not empowered to modify or reform the non-compete clause to make it enforceable, apparently despite the specific incorporation of a reformation provision in the agreement of the parties. *CAE Vanguard, Inc. v. Newman*, 246 Neb. 334, 518 N.W.2d 652, 656 (1994) (finding a contract provision permitting reformation "is of no effect ... parties may not confer upon the court powers which it does not possess"). The "courts may not rewrite a contract for parties ... we must either enforce it as written or not enforce it at all." *Id.* (internal citations omitted).

 Under Iowa law, "there is no public policy or rule of law which condemns or holds in disfavor a fair and reasonable [non-compete] agreement ... such a contract is entitled to the same reasonable construction ... accorded to business obligations in general." *Curtis 1000, Inc. v. Youngblade*, 878 F.Supp. 1224, 1259 (N.D.Iowa 1995) (quoting *Dental Prosthetic Serv. v. Hurst*, 463 N.W.2d 36, 38 (Iowa 1990)). Iowa courts consider three factors in determining the validity of a non-compete agreement: "(1) Is the restriction reasonably necessary for the protection of the employer's business; (2) is it unreasonably restrictive of the employee's rights; and (3) is it prejudicial to the public interest?" *Id.* at 1260 (citing *Lamp v. Am. Prosthetics, Inc.*, 379 N.W.2d 909, 910 (Iowa 1986); *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983); *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 369 (Iowa 1971); *Phone Connection, Inc. v. Harbst*, 494 N.W.2d 445, 449 (Iowa Ct.App.1992)). Thus, under Iowa law, the inquiry focuses on the reasonableness of the restriction in the non-compete agreement and whether the restriction strikes an appropriate balance between employer and employee interests. *Curtis 1000, Inc.*, 878 F.Supp. at 1260 (quoting *Iowa Glass Depot*, 338 N.W.2d at 381). The restriction "must be no greater than necessary to protect the employer," and any burden imposed on the employee must be in proportion to the employer's expected benefits. *Id.* Unlike Nebraska, where the court is not empowered to modify or reform the non-compete agreement to make it enforceable, in Iowa, the court may modify the covenant to make it no more restrictive than necessary. *See Presto–X–Co. v. Ewing*, 442 N.W.2d 85, 90 (Iowa 1989) (citing *Ehlers*, 188 N.W.2d at 369); *Farm Bureau Serv. Co. of Maynard v. Kohls*, 203 N.W.2d 209, 211 (Iowa 1972) (recognizing that *Brecher v. Brown*, 235 Iowa 627, 17 N.W.2d 377 (Iowa 1945), had been over-ruled on this ground by *Ehlers*); *Ehlers*, 188 N.W.2d at 374 (specifically overruling *Brecher* on this issue); *Phone Connection Inc.*, 494 N.W.2d at 449.

Thrasher argues he has a strong likelihood of success on the merits because, applying Nebraska law, the non-compete clearly extends beyond "soliciting [Grip–Tite's] clients or accounts with whom [Thrasher] actually did business and has personal contact." *Polly*, 407 N.W.2d at 756. Thrasher argues even Iowa law, which does not focus as intently on existing relationships, has not enforced a non-compete clause as far-reaching as the one at issue herein. *Curtis 1000, Inc.*, 878 F.Supp. at 1262 (collecting Iowa case law and noting two-to-three year covenants are generally enforced, and covenants beyond five years are not; restricted areas limited to ten to thirty miles are often found reasonable, but inclusion of areas in which the employee had not worked or would not have an undue competitive advantage are often found unreasonable.).

 Even at this early stage of the litigation, Grip–Tite has presented some indications the broad geographic span of its business and Thrasher's dealer development efforts warranted something more than a narrowly confined non-compete region. In consideration of the need for a preliminary injunction, the Court does not reach the ultimate question of the validity and necessity of the non-compete provisions but must project the likelihood of success on the merits with recognition the conclusions reached now are subject to change on a more complete record. For the present purposes, the Court finds the non-compete provisions are strikingly broad under either Iowa or Nebraska standards. Accordingly, for the sole purpose of determining the propriety of issuing injunctive relief, the Court finds Thrasher has demonstrated a likelihood of

success on the merits, whatever the resolution of the choice of law analysis; and this *Dataphase* factor weighs in favor of the Plaintiff.

### B. The threat of irreparable harm to Thrasher.

■ Although, as the Court previously noted, no single *Dataphase* factor is dispositive, the "party moving for a preliminary injunction is required to show the threat of irreparable harm." *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994), *accord Mid–America Real Estate Co. v. Iowa Realty Co.,* 406 F.3d 969, 977 (8th Cir.2005). The current motion turns on this important factor.

■ Distinguishing this dispute from one that can be resolved with a legal remedy, Thrasher alleges irreparable harm arising from the loss of goodwill. He asserts the non-compete is presently impacting his rights because it affects his ongoing relationships with others in the foundation repair industry, he needs to be aware of his rights and obligations so he can plan his business affairs come May 1, 2008, and his associates will conduct business with him differently between now and May 1 because of the threat of enforcement of the non-compete after that date. Grip–Tite, on the other hand, argues it cannot take any action to enforce the non-compete until the contract expires in April, thus none of the harms alleged by Thrasher will come into play until a later date, and immediate injunctive relief is not warranted.

Thrasher does not challenge the validity of the restriction before the Development Agreement expires on April 30, 2008, and has indicated his intention to comply with the terms of the Development Agreement until its expiration. Counsel for both parties expressed at the hearing an understanding that the practical effect of any injunctive relief the Court may issue will not materialize until after the agreement expires. Thrasher contends, however, that Grip–Tite's ability to enforce the non-compete on May 1 affects his rights and obligations at present and threatens to injure the goodwill he has built up over many years in the foundation repair business.

■ "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury," as those items are not readily compensable by monetary damages. *United Healthcare Ins. Co. v. AdvancePCS,* 316 F.3d 737, 741 (8th Cir. 2002); *cf. O'Connor v. Peru State Coll.,* 728 F.2d 1001, 1003 (8th Cir.1984) (finding potential harm from termination of employment "is not necessarily irreparable and . . . can be compensated for by money damages."). Thrasher, however, has failed to sustain his burden of demonstrating that those potentially irreparable harms will manifest before May 1, 2008, based on anything other than operation of the Development Agreement itself, and Thrasher does not challenge the validity or legality of enforcing the restriction while the agreement is still in effect. This is insufficient to demonstrate injury because "an injury is legally irrelevant if the conduct from which it stems is legal." *Mid–America Real Estate Co.,* 406 F.3d at 977.[1]

■ Counsel for Thrasher asserted the law does not require Thrasher to wait to seek declaratory relief until May 1, or whenever thereafter Grip–Tite seeks to enforce the challenged non-compete clause. Thrasher is correct, and his litigation strategy has logical appeal, but the matter before the Court is a request for a prelimi-

---

1. Even if the Court were to enjoin Grip–Tite from taking any action to enforce the non-compete until April, such an action would not require the Court to decide the merits of the declaratory judgment in Thrasher's favor. Thus, it is difficult to see the planning advantage Thrasher would gain by the issuance of a preliminary injunction now.

nary injunction, which is a remedy distinct from a declaratory judgment. Even though the threat of action on a non-compete clause may be injurious enough to support an eventual declaratory judgment and/or permanent injunctive relief, in the absence of *immediate* irreparable harm, a preliminary injunction will not issue. *See Newell Co. v. Lee*, 950 F.Supp. 864, 868 (N.D.Ill.1997) (dismissing plaintiff's claim for preliminary injunction "because there is no threat of immediate irreparable harm" but finding claims for permanent injunctive relief and declaratory judgment "ripe because of defendant's alleged threat" to engage in activities in violation of the non-compete covenant). The Court appreciates Thrasher's desire to obtain a ruling on the validity of the non-compete clause as soon as possible as a logical step in his business continuity planning.[2] He may obtain a declaratory judgment based on the threatened enforcement of a potentially invalid non-compete clause, but those harms are not immediate, do not currently present this Court with an irreparable injury, and thus do not support preliminary

injunctive relief.[3] When a party seeks a preliminary injunction conferring "substantially the same relief it would obtain after a trial on the merits," a district court does not clearly err in denying preliminary injunctive relief. *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir.1993).

## C. The balance between the potential harms to Thrasher and Grip–Tite.

Grip–Tite argues the balance of harms favors it and weighs against entry of a preliminary injunction because (1) the breach of a valid non-compete clause has generally been held to constitute irreparable harm, *see Curtis 1000, Inc.*, 878 F.Supp. at 1273 (finding "the loss of customer goodwill can constitute irreparable injury because damages flowing from such losses are difficult to compute") (citing *Medtronic, Inc. v. Gibbons*, 684 F.2d 565 (8th Cir.1982)); *United Healthcare Ins. Co.*, 316 F.3d at 741 ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury."); (2) it would lose its contractual bargain in choos-

---

**2.** At hearing, counsel reinforced this logical litigation approach by noting the declaratory judgment action was filed in September of 2007 in an effort to resolve issues prior to the termination of the Dealer Licensing Agreement, but the remedy has been delayed by procedural issues. This Court, however, is responding to a matter transferred here in December.

**3.** Grip–Tite additionally asserts the requested injunction lacks the specificity required by Federal Rule of Civil Procedure 65(d), which states an injunction must articulate the reasons it is issued, use specific terms, and describe the acts restrained in reasonable detail. "This requirement of specificity spares courts and litigants from struggling over an injunction's scope and meaning by informing those who are enjoined of 'the specific conduct regulated by the injunction and subject to contempt.'" *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412, 414 (7th Cir. 2008) (quoting *Marseilles Hydro Power, LLC v.*

*Marseilles Land and Water Co.*, 299 F.3d 643, 647 (7th Cir.2002)).

Thrasher seeks to enjoin Grip–Tite "from taking any action to enforce the non-compete ... including without limitation, by the filing of any proceeding regarding the non-compete in Iowa state or federal court." (Pl. Motion for Temporary Restraining Order and Temporary Injunction (Clerk's No. 21–2)). No additional action was filed in any Iowa court, per the parties' agreement, and the case is already in this Court upon a transfer from the District of Nebraska. Accordingly, the specified conduct sought to be enjoined is moot. The remaining conduct Thrasher asks the Court to enjoin is couched in expansive language. Thrasher has not identified a specific threat to his operations once the non-compete comes into play. Even if the Court were to find irreparable harm in this case, the Court is not able on the present record to fashion an injunction that would meet the required specificity of Rule 65.

ing the applicable law; and (3) the harms Grip–Tite asserts will befall it in the absence of the non-compete clause are precisely the sort of harms that will befall Thrasher if the non-compete clause is enforced.

As previously discussed, Thrasher claims the enforcement of the non-compete provision will have a significant and devastating effect on his business, require him to shut down his facility and lay off employees, render him unable to maintain current industry relationships, and damage value of his business as a going concern. Grip–Tite asserts Thrasher's damages will be monetary in nature and therefore fully compensable in the absence of injunctive relief.

■■ Because the Development Agreement concerns client development and customer relationships, the Court finds each party has the potential to suffer similar harm. As noted in the previous section, the timing of the motion plays a pivotal role in the Court's decision. The parties' relationship is currently governed by the terms of a written agreement, and neither party contests the applicability of that agreement until May 1. With both parties susceptible to similar harms and both parties admittedly bound under the same agreement, the Court finds the balance of the harms is in equipoise and does not support issuance of a preliminary injunction. *Sanborn Mfg. Co., Inc.*, 997 F.2d at 490 ("The primary function of a preliminary injunction is to preserve status quo until, upon final hearing, a court may grant full effective relief."). The parties are presently operating under the terms of the ongoing business relationship. The harms asserted by Thrasher would only come into play, if at all, when the Development Agreement expires in April. Grip–Tite cannot take any action to enforce the non-compete until that time; accordingly, a preliminary injunction is not necessary to preserve the status quo.

## D. The public interest.

■■ Grip–Tite argues the public has a substantial interest in "the freedom of all individuals and entities to enter into whatever contractual arrangements they deem appropriate with the expectation that the specific promises made will be enforced." Def. Br. 9 (Clerk's No. 21–9). Still arguing for the application of Iowa law, Grip–Tite directs the Court to *Curtis 1000, Inc. v. Youngblade*, where the Northern District of Iowa found no "public interest prevent[s] issuance of a preliminary injunction to enforce the covenant not to compete," because Iowa law and public policy does not disfavor "fair and reasonable" non-compete agreements. *Curtis 1000, Inc.*, 878 F.Supp. at 1274.

Thrasher, embracing Nebraska law, asserts the public policy in protecting the expectations of contracting parties is outweighed by the interest in preventing the enforcement of overly broad non-compete clauses. *See Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197, 203–04 (2001) ("Although protecting parties' expectations is always a central policy consideration in contracts, that interest does not supersede all other public policies.... Iowa's interest in protecting the expectations of the parties is outweighed by Nebraska's strong public policy considerations on this issue."). Thrasher asserts the public's interest in maintaining competition in the foundation repair industry mitigates in favor of the requested preliminary injunction. While the public also has an interest in the enforcement of valid non-compete agreements, *Curtis 1000, Inc.*, 878 F.Supp. at 1274, the Court has already determined the non-compete clause at issue here is so broad its validity is suspect under either Iowa or Nebraska law, and therefore the public interest likely

weights in favor of Thrasher. Further, the injunction would not be to enforce a non-compete provision, as Grip–Tite asserts, because the party seeking injunctive relief here is not the employer.

## CONCLUSION

For purposes of the pending Motion for Preliminary Injunction only, the Court finds Thrasher is likely to succeed on the merits regarding the enforceability of the non-compete clause and the public interest also on this record weighs somewhat in Thrasher's favor. The Court finds preliminary injunctive relief may not issue, however, because Thrasher has not demonstrated irreparable harm on the current record. *See Watkins Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir.2003) ("Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction."). The motion for preliminary injunction (Clerk's No. 21–2) must be **denied.** Recognizing the desirability of obtaining a ruling on the declaratory judgment claim on an expedited schedule, the Court invites counsel to confer and contact Magistrate Judge Walters regarding an appropriate scheduling order.

**IT IS SO ORDERED.**