**DENTAL PROSTHETIC SERVICES, INC., Appellant,**

**v.**

**James P. HURST, Appellee.**

No. 89–1123.

Supreme Court of Iowa.

Nov. 21, 1990.

**37**

Paul A. Zoss, Ron Adams, and Burns H. Davison III of Adams, Howe & Zoss, P.C., Des Moines, for appellant.

George D. Scully, Jr., and Joe Nutting of Martin, Nutting, Miller, Keith, Pedersen & Scully, Waterloo, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, SNELL and ANDREASEN, JJ.

SCHULTZ, Justice.

In this appeal, Dental Prosthetic Services, Inc. (DPS) brought suit against James P. Hurst, a former employee, to enforce a covenant not to compete contained in the written employment agreement between the parties. DPS also seeks an accounting of the profits that Hurst earned while he allegedly violated the covenant. Following a bench trial, the court dismissed the petition. The court found that DPS failed to prove that Hurst's business was located within a fifty-mile radius of DPS's business. Alternatively, the court concluded that the restrictive covenant was unreasonable as to time and area. DPS appealed this decision, and the court of appeals affirmed by operation of law. We granted DPS's application for further review. We affirm the decision of the court of appeals and the judgment of the district court.

In our de novo review of this equity action we find the facts anew. Located in Cedar Rapids, Iowa, DPS operates a dental laboratory which includes the manufacturing, selling, and servicing of prosthetic devices pursuant to the prescriptions of the dentists who are its customers. In 1980, it hired Hurst, a twenty-year veteran of the dental laboratory business, as a production manager.

DPS and Hurst entered into an employment contract that contained the following restrictive covenant:

Upon the termination of Employee's employment. . . . Employee shall not directly or indirectly within a radius of 50 miles of Employer's place of business,

enter into or engage in any business similar to the type of business conducted by Employer at the time of the termination of this Agreement ... for a period of three (3) years after the date of termination of his/her employment hereunder.

In July 1987 Hurst resigned from his employment with DPS. Hurst began working for a dental laboratory in Ohio. However, Hurst left Ohio three months later and returned to Iowa. In October 1987 Hurst opened his own dental laboratory in Oelwein.

DPS filed a lawsuit against Hurst claiming that Hurst violated the restrictive covenant not to compete in the employment contract. DPS requested that the court enjoin Hurst from engaging in a business similar to the type conducted by DPS. In addition, DPS asked the court to award damages for its lost profits and good will.

In claiming that Hurst violated the covenant's distance restriction, DPS focuses on the location of Hurst's laboratory and his business activities. It claims that the dental laboratory is physically located within the restricted fifty-mile radius and that Hurst has engaged in sales, deliveries, and consultations within this area. We disagree with these contentions and need not address the trial court's alternate determination on the reasonableness of the covenant as to time and area.

■ I. *Restriction on location.* Both parties agreed that the covenant prohibits Hurst from establishing his laboratory within fifty miles of DPS's place of business. The burden of proof is upon DPS. *See* Iowa R.App.P 14(f)(5). In equity cases the court gives weight to the fact findings of the trial court, but is not bound by them. Iowa R.App.P. 14(f)(7).

DPS presented evidence by an expert witness that the entire city of Oelwein was within fifty miles of DPS's place of business and that the north edge of Oelwein was 48.29 miles from DPS's laboratory. The expert had not located Hurst's laboratory, which the undisputed evidence shows to be outside and north of the city limits of Oelwein. Hurst testified that his laboratory was more than fifty-miles away

from the site of DPS's laboratory. We agree with the trial court that DPS did not establish that the two laboratories are within a fifty-mile radius of each other.

II. *Restriction on engaging in business.* The parties dispute the meaning of the language "directly or indirectly ... enter into or engage in any business similar to the type of business conducted by Employer...." DPS urges that Hurst performs services for dentists located within the fifty-mile radius of DPS. There is no dispute that Hurst services dental customers in Oelwein, Independence, and Marion, cities which are all within fifty miles of DPS's place of business. Hurst maintains that he conducts business in his laboratory and that the terms of the covenant do not prevent him from fulfilling the orders made by dentists within the fifty-mile radius of DPS. Essentially, Hurst's argument is that his business is conducted at his laboratory in Oelwein.

This dispute is not surprising. "The term 'business' has no definite or legal meaning." *Black's Law Dictionary* 248 (rev. 4th ed. 1968). We have struggled with the definition of the term "business" as applied to a church. *See Gardner v. Trustees of Main Street Methodist Episcopal Church,* 217 Iowa 1390, 1401–03, 250 N.W. 740, 745–46 (1933). We conclude that the term "business" is ambiguous, thus requiring us to construe the contract.

■ III. *Construction of contract.* Hurst urges that we strictly construe the covenant not to compete in this contract against DPS, the drafting party. We indicated that our earlier cases indulge in loose generalities and that the law does not favor contracts in restraint of trade. *Uptown Food Store, Inc. v. Ginsberg,* 255 Iowa 462, 467–68, 123 N.W.2d 59, 62–63 (1963) (citing *Sickles v. Lauman,* 185 Iowa 37, 45, 169 N.W. 670, 673 (1918)). However, we added that:

> [T]here is no public policy or rule of law which condemns or holds in disfavor a fair and reasonable agreement of this character, and such a contract is entitled to the same reasonable construction ...

that [is] accorded to business obligations in general. *Id.* In *Uptown* we recognized the rule stated in *Haldeman v. Simonton,* 55 Iowa 144, 146, 7 N.W. 493, 494 (1880), that in the sale of a medical practice a covenant, being in restraint of trade and personal liberty, should not be construed to extend beyond its fair import. We reiterated this rule in *Thomas v. Thomas Truck & Caster Co.,* 228 N.W.2d 52, 55 (Iowa 1975), another sale-related, covenant-not-to-compete case. We adopt the rule in *Haldeman* and *Thomas* in cases involving covenants in an employment contract.

When construing contractual terms chosen by the parties, our object is to ascertain their meaning and intention. "Interpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect." *Fashion Fabrics of Iowa v. Retail Investors,* 266 N.W.2d 22, 25 (Iowa 1978). In this case, we are aided by extrinsic evidence which allows us to make a factual, rather than a legal, determination of the meaning of the contract. *Id.* "[E]xtrinsic evidence is admissible as an aid to interpretation when it throws light on the situation of the parties, antecedent negotiations, the attendant circumstances and the objects they were striving to attain." *Id.* Thus, we now examine the extrinsic evidence presented in this case to determine the meaning of the contractual language which is in dispute.

A DPS officer testified that under the covenant, an ex-employee was not to contact or work with any of DPS's customers. It was her contention that Hurst was delivering, calling and servicing DPS's customers at their place of business. DPS presented evidence showing that the income Hurst's laboratory received came from dentists who were located in Oelwein, Independence, and Marion, and were former clients of DPS. The evidence clearly shows that Hurst makes deliveries to these dentists upon their request and performs service work either in their office or in his laboratory. DPS was unable to show that Hurst had actively solicited these clients and the evidence is clear that these former clients contacted Hurst. The evidence indicates that the dentists themselves sometimes delivered the work and that their patients could have service work performed at Hurst's laboratory.

Undoubtedly, DPS prepared the restrictive covenant to protect itself from the loss of customers. There is no language in the agreement, however, that prohibits Hurst from contacts with former customers or accepting work from them. The fact that DPS's attorney drew up the contract invokes the principle that doubtful language in a written instrument is construed against the drafting party. *Village Supply Co., Inc. v. Iowa Fund, Inc.,* 312 N.W.2d 551, 555 (Iowa 1981). In this case, any ambiguity in the term "business" and the surrounding language should be construed against DPS, the drafting party.

When we consider the language of the covenant as a whole and the extrinsic evidence provided, we interpret the term "directly or indirectly engage in business" to encompass only the activities conducted at Hurst's laboratory and not the incidental deliveries and service calls made within the prohibited fifty-mile area. Neither laboratory has a sales operation nor salesmen; each relies primarily upon the quality of its laboratory work to sell its products. Consequently, the type of business in which Hurst was prohibited from engaging under the language used in this covenant relates to the bulk of the dental prosthetic business—the manufacturing process. In arriving at this conclusion, we recognize that a different interpretation may have been required if the facts showed that Hurst spent substantial time in the restricted area soliciting business. However, no testimony was elicited detailing the amount of time required to deliver and service these dentists. We find that Hurst did not directly or indirectly engage in business within the restricted area.

IV. *Conclusion.* Under our construction of the employment contract in this case, we hold that Hurst did not violate the restrictive covenant. Consequently, we

need not decide whether the covenant was unreasonable as to time and area.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.