# IN THE COURT OF APPEALS OF IOWA

No. 16-1368
Filed January 24, 2018

**WALLACE AUTO SUPPLY, INC. d/b/a GREENFIELD TRUE VALUE,**
    Plaintiff-Appellee/Cross Appellant,

**vs.**

**KENT SINN and JULIANN SINN,**
    Defendants-Appellants/Cross Appellees.

_____

**KENT SINN and JULIANN SINN,**
    Plaintiffs-Appellants/Cross Appellees

**vs.**

**WALLACE AUTO SUPPLY, INC. d/b/a GREENFIELD TRUE VALUE,**
    Defendants-Appellee/Cross Appellant

_____

Appeal from the Iowa District Court for Adair County, John D. Lloyd, Judge.

The parties in a combined action for breach of contract and declaratory judgment appeal and cross-appeal the district court's ruling. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Martin L. Fisher of Fisher, Fisher & Groetken, P.C., Adair, for Kent and Juliann Sinn.

Matthew J. Hemphill of Bergkamp, Hemphill & McClure, P.C., Adel, for appellee.

Heard by Vogel, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The underlying proceedings are based on the purchase agreement entered into by Kent and Juliann Sinn and Wallace Auto Supply, Inc. whereby Wallace Auto would purchase the Sinns's Greenfield True Value store for $1 million. As part of the purchase agreement, the Sinns were to leave $618,000 worth of certain inventory in the store. Additionally, the agreement included a non-compete provision that prevented the Sinns from "directly or indirectly" competing "within a ten mile radius of Greenfield, Iowa" for three years after the closing date.

After the parties entered into the agreement, the Sinns filed a petition for declaratory judgment in June 2014, seeking to have the district court interpret the non-compete provision. In October 2015, Wallace Auto filed a petition at law, alleging the Sinns had breached the contract by violating the non-compete agreement and by leaving approximately $96,000 less inventory in the store than the purchase agreement required. The two actions were later consolidated.

Following a bench trial, the district court granted declaratory relief interpreting the non-compete agreement in favor of the Sinns. On Wallace Auto's breach-of-contract claim, the court found the Sinns had breached the contract by removing more inventory from Greenfield True Value than the purchase agreement allowed, but the court reduced the damages Wallace Auto requested by 30%.

The Sinns appealed and Wallace Auto cross-appealed.

On appeal, the Sinns maintain there was no reasonable basis from the evidentiary record from which the court could properly infer or approximate the damages awarded and the award of damages unjustly enriched Wallace Auto. In the alternative, the Sinns argue that if Wallace Auto is entitled to any damages, it

should be only nominal damages for the Sinns's breach of contract. The Sinns request reasonable appellate attorney fees based on the language of the agreement. The Sinns failed to appear for oral argument.

On cross-appeal, Wallace Auto asks us to affirm the district court's ruling the Sinns breached the contract by failing to have $618,000 of inventory in the store and asks us to reverse the court's ruling reducing the amount of damages requested by 30%. Wallace Auto also challenges the district court's ruling determining the Sinns did not breach the non-compete provision of the contract. Wallace Auto also requests reasonable appellate attorney fees.

**I. Background Facts and Proceedings.**

The Sinns owned and operated the Greenfield True Value store from 1997 until 2014, when Wallace Auto purchased and took possession of the store. The purchase agreement provided that Wallace Auto would pay the Sinns $1 million total, with $618,000 being allocated to inventory; $305,000 for the real estate; $76,500 for "all other assets" (fixtures and other non-merchandise in the store); and $500 for the non-compete clause.

The agreement further specified the $618,000 in inventory would not include "vehicles, new lawnmowers, new mower parts, major appliances, automotive parts, trailers, and rental equipment ('the inventory')." Because the Sinns usually kept more than $618,000 inventory in the store, it was agreed they would remove any excess and place it in their True Value store in Creston.[1]

The non-compete clause stated:

---

[1] The Creston store was more than ten miles from the Greenfield store.

For the consideration set forth above, to be paid at closing, Seller and Kent Sinn and Juliann Sinn in their individual capacities, shall not directly or indirectly engage in, and shall have no Interest In any business, firm, person, partnership, or corporation, whether as an employee, officer, director, agent, security holder, creditor, consultant or otherwise, that engages In the sale of any types of items sold True Value stores within a ten (10) mile radius of Greenfield, Iowa at any time within three (3) years immediately following the closing date.

The closing of the sale took place on February 7, 2014. Per the agreement, the Sinns had an additional thirty days "to remove the excepted items from the premises."

Kent testified that as his employees removed items from the Greenfield store, they scanned them at the register as if they were being purchased in order to remove them from the store's inventory (and transfer them to the Creston store's inventory). A number of employees helped remove the items.

During the negotiations, the parties discussed that the inventory in the store may include obsolete, unsellable items. As a result, they agreed that the nuts, bolts, and fasteners located in the Greenfield store would not be inventoried but would be transferred to Wallace Auto outside of the inventory to offset the obsolete items.

However, the Sinns misunderstood the agreement, and, as a result, they removed approximately $32,000 more in inventory than necessary to get the store to $618,000. Kent realized the mistake while his employees were still removing items from the store—during the thirty days after closing—and he testified that he

then told them to stop. According to Kent, at the time they ceased removing items, there was still a number of excluded items[2] in the store.

Kent began returning items to Wallace Auto from the Creston True Value store as Wallace Auto requested them. As the relationship between the parties began to sour, the Sinns chose to pay Wallace Auto the balance of the outstanding $32,000 and cut ties.

During the same period, Wallace Auto continued to use the Sinns's inventory system for the Greenfield store.[3] The Sinns had used one software inventory system for both their Greenfield and Creston stores. The two stores' inventories were kept separately, so the person using the program had to enter information identifying which store was involved in the order or sale. Before Wallace Auto had their own system installed, some sales and orders were completed in the Greenfield store that ultimately showed up in the records of the Creston store.[4] Kent testified that once it became clear the errors were being made, the workers at the Greenfield True Value were told and the errors that had been made were corrected.

In the year following the sale, a dispute arose over the interpretation of the non-compete provision in the contract. The Sinns filed a petition for declaratory judgment. In it, they advised the court the specific disputes were over the following:

---

[2] As the parties did, we refer to the categories Wallace Auto did not agree to purchase as the "excluded." Namely, "vehicles, new lawnmowers, new mower parts, major appliances, automotive parts, trailers, and rental equipment."

[3] The purchase agreement provided for Wallace Auto's use of the system for a period of time until it could get its own up and running.

[4] As Kent testified, the same system was used for both stores, but you had to first enter a portal for either the Creston store or the Greenfield store before you could take further actions.

whether the Sinns could sell retail products, mowers, appliances, hardware, etc. to individuals who bought items in their True Value store in Creston but who live within the ten-mile radius of Wallace Auto's Greenfield True Value; whether the Sinns could deliver items purchased in their Creston store to individuals who lived within the ten-mile radius of the Greenfield store; and whether the Sinns could operate their company vehicles advertising the Creston True Value store within the ten-mile radius. In its response, Wallace Auto agreed with the Sinns's list of disputes and added others, including whether the Sinns could—in the ten-mile radius—advertise in newspapers; "pick up or deliver sold, rented, or repaired items"; or directly contact or solicit individuals for the purpose of sales, rentals, or repairs. Wallace Auto also asked for clarification whether the Sinns's employees were subject to the same restrictions.

Before the declaratory judgment was decided, in October 2015, Wallace Auto filed a petition at law for breach of contract. Wallace Auto claimed the Sinns had breached the purchase agreement in two ways. First, Wallace Auto maintained it had paid for items it believed it was getting and that had been counted toward the $618,000 worth of inventory but that it had not actually received. Wallace Auto presented evidence showing the items that had been counted toward the inventory but were not present in the store at the time of closing totaled $96,563.87.[5] Second, Wallace Auto maintained the Sinns had breached the non-compete provision by "engaging in sales of items and services sold at True Value

---

[5] At the time it filed its petition, Wallace Auto asserted the damages totaled $98,091.69. Later accounting showed there had been some errors in adding the value of the allegedly missing items; Wallace Auto amended its request.

stores within the prohibited radius." Referencing a provision in the purchase agreement, Wallace Auto asked for costs and attorney fees.

The Sinns moved to consolidate the breach-of-contract action with the petition for declaratory judgment, and the district court granted the motion.

The two matters were tried to the court in June 2016.

At trial, David Wallace—the owner of Wallace Auto—testified that he stopped using the Sinns's inventory system sometime within a few months of the sale being final. When they switched inventory systems, the data from the Sinns's system was imported into the new system—there was no manual entering of the inventory in the new system. In the late fall or early winter of 2014, the employees at the Greenfield True Value began checking some inventory in preparation for ordering products to sell for spring and noticed some discrepancies between what was listed as inventory in the computer and what was actually in the store. Wallace Auto contacted their software company and asked for a printout of the entire inventory; they were provided a list as to what the inventory was listed in the computer on February 27.[6] David Wallace tasked an employee, Jeremy Rohner, with comparing the inventory list to the actual physical items in the store. According to Rohner's testimony, over two or three days in December, he highlighted any item that was listed in the inventory that he could not find in the store.[7] He also, as instructed, highlighted any items that were listed in the

---

[6] It is unclear why the inventory list was not printed for February 7, the date the purchase was completed. Several witnesses were asked, and none was sure. It seems there may have been a misunderstanding between the employee in charge of requesting it and the software company about which date to use.

[7] Rohner testified that he also helped customers and completed other work tasks during those days.

inventory that had been excluded from the purchased inventory pursuant to the contract, including auto and lawn mower parts, equipment to be rented to customers, and appliances. Another employee, Ann Culver, was tasked with adding up the values of the items listed in the inventory but not found in the store. Her initial calculations resulted in a sum of $98,091.69. It appears some human errors were made, as later use of a computer to add the values resulted in the sum of $96,563.87.

Kent Sinn also testified at trial. He testified that when he owned the Greenfield True Value, they attempted to inventory the entire store each year by doing separate sections or areas throughout the year. He agreed that neither party had completed an inventory of the store as part of the purchase agreement. He testified that when he realized too much inventory had been removed from the store, his employees "just quit, packed up and left." He maintained there were still parts "in the parts room that we hadn't had time to transfer." Kent also testified that there were a number of items left in the store that they never inventoried— items Wallace Auto would have then received without the items counting toward the $618,000 in inventory. He stated:

> We make different buys from time to time. Like True Value will have ten pallets of merchandise at scratch and dent. They say you bid on it. I would bid on it and buy it. We would bring it back in the store and sell it under basically what I call a dump number, which means it's not in inventory, but every time it's sold it's calculated under that number. So we would give X amount of dollars—we would sell these products under a generic dump number so they were not in the system as inventory yet. They were out on the floor.

In its written ruling, the district court concluded that the non-compete provision did not prevent the Sinns from delivering lawn mowers that were

purchased by customers in their Creston store to the customers' homes located within the ten-mile radius created by the clause. As such, the court concluded the Sinns had not breached the non-compete provision of the purchase agreement in doing so.

The court found the Sinns had breached the agreement regarding the sale of the inventory, stating, "[T]he court is convinced Wallace [Auto] was charged for inventory that [it] was not supposed to be buying. . . . The court therefore concludes that the Sinns breached their contract with Wallace by failing to provide inventory to the extent required by the contract." However, the court found Wallace Auto likely had not suffered the full damages it claimed—$96,563.87. The court reduced the award of damages by 30%, reasoning the inventory listed provided by Wallace Auto:

> was prepared by a different software program with imported information from the Sinn's system. The court also recognizes that the employee who verified [the inventory list] and the items not in the store was performing this task while also performing other tasks including waiting on customers. The court recognizes as well that some erroneous information was input by Wallace's employees shortly after the sale, although that would more likely have caused items not to be listed in the Greenfield inventory than to list items that were not in the store. As well, time had passed between the time the inventory was dated and the time it was verified, raising the possibility that some items were no longer in the store because they had been sold. The court concludes that a 30% reduction in the amount claimed by Wallace would appropriately account for all of these factors. Wallace [Auto] is therefore entitled to damages in the amount of $67,500 and judgment should be entered in favor of Wallace Auto Supply, Inc. and against Kent and Juliann Sinn in that amount.

The Sinns appealed, and Wallace Auto cross-appealed.

**II. Standard of Review.**

We review a claim of breach of contract for correction of errors at law. *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013). We are bound by a district court's findings of fact when the findings are supported by substantial evidence in the record, but the "court's conclusions of law or its application of legal principles do not bind us." *Id.*

Although the questions regarding the interpretation and scope of the non-compete clause were originally pled in equity, the issue was ultimately combined with that of the breach-of-contract petition, and the combined matter was tried at law.[8] "A declaratory judgment action tried at law limits our review to correction of errors at law." *American Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 575 (Iowa 2004).

## III. Discussion.

### I. Damages for Reduced Inventory

On appeal, the Sinns concede they breached the purchase agreement. However, they challenge whether Wallace Auto met its burden of providing sufficient evidence to award damages, arguing there is no reasonable basis from which the court could determine damages and that any award is improperly speculative in nature. In the alternative, the Sinns maintain that if Wallace Auto is entitled to any damages, it should be only nominal damages.

In its cross-appeal, Wallace Auto also challenges the district court's award of damages, maintaining the court committed a legal error when it reduced

---

[8] We note that not only did the district court rule on multiple objections throughout the trial, it also captioned its ruling as "Findings of Fact, Conclusions of Law, and Judgment Entry" as opposed to a "decree." *See Sutton v. Iowa Trenchless, L.C.*, 808 N.W.2d 744, 748 (Iowa Ct. App. 2011).

damages by 30%. Wallace Auto maintains there is no evidence in the record from which to base the reduction.

We start first with the Sinns's contention that exhibit 4, the printout from the software company of the computer's listed inventory as of February 27, 2014, that Rohner used to compare with the inventory in the actual store and highlighted accordingly, was unreliable to determine damages. The Sinns maintain the basis of their argument is the best-evidence rule, found in Iowa Rule of Evidence 5.1002. But the Sinns may not base their argument on these grounds. As they admit, they first raised the issue of "best evidence" in a posttrial brief filed with the court. They did not raise the issue during trial, and, in fact, they conceded the admission of the exhibit at the start of Wallace Auto's case. This proceeding was tried at law.[9] *See Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980) (noting ruling on evidentiary objections "is normally the hallmark of a law trial, not an equitable proceeding"). Raising an objection about evidence after conceding to its admission and after the trial has concluded does not preserve error, as neither the court nor the opposing party was given a chance to correct the alleged defect in the proceedings. *See Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017) ("[O]ne purpose of our error preservation rules is to ensure that the opposing party and the district court are alerted to an issue at a time when corrective action can be taken or another alternative pursued." (alteration in original) (citation omitted)). Moreover, nothing in the court's written ruling indicates that it considered the Sinns's best-evidence argument. *See Peters v. Burlington N. R.R. Co.*, 492 N.W.2d 399, 401 (Iowa 1992)

---

[9] Even if there is a dispute over whether the declaratory judgment was tried at law or in equity, the breach-of-contract claim was pled at law.

13

("Ordinarily, issues must be raised and decided by the trial court before they may be raised and decided on appeal."). This contention has not been preserved for our review, and we do not consider it further. *See Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 695 (Iowa 2013) ("It is well-settled that a party fails to preserve error on new arguments or theories raised for the first time in a posttrial motion. . . . Although our error preservation rules are not designed to be hypertechnical, we require that the nature of any alleged error be timely brought to the attention of the district court." (citations omitted)).

Next, we consider the Sinns's argument there was not sufficient evidence in the record to support the court's award of damages and Wallace Auto's competing counter-argument there was no evidence in the record to support the court's reduction of their damages by 30%.

Case law distinguishes between proof of the fact that damages have been sustained and proof of the amount of those damages. *See Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998). Damages should not be awarded "where the evidence is speculative and uncertain *whether* damages have been sustained." *Id.* (emphasis added). "But '[if] the uncertainty lies only in the *amount of damages*, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated." *Id.* (alteration in original) (emphasis added). Here, the Sinns do not appear to contest that some damages were suffered; rather, they maintain there is no reasonable basis to determine the amount of damages suffered. We disagree.

Wallace Auto moved to admit, without an objection from the Sinns, a 671-page document purporting to be a list comprised of everything the computer

inventory system showed for the Greenfield True Value on February 27. One of Wallace Auto's employees, store manager Douglas Buckner, testified he called the True Value and the inventory software company and asked if it was possible to get the listed inventory for a certain date. He requested the list and exhibit 4—without highlights—was the information Buckner received. Buckner then printed the document on December 12 from the office computer. Rohner testified he was told by David Wallace to "go through anything that you notice that was—you know, that obviously something that was here that we didn't have as far as automotive and lawn and garden and appliances." He testified he did as asked and, to his knowledge, he did not "over highlight items."

With his testimony, Kent Sinn attempted to raise questions about the reliability of the exhibit, testifying about the amount of time that had passed between the date the inventory was printed and when Rohner's search took place. He also questioned how well Rohner could complete the search for the listed inventory over only two or three days, while also helping customers and completing other tasks. Otherwise, Kent's only testimony directly at odds with the testimony of the witnesses for Wallace Auto was that at the time he learned he had already removed too much inventory from the store and told his employees to stop removing inventory, "[t]here was just multiple parts in every direction in the parts room that we hadn't had time to transfer. . . . Parts were still in the parts room." The district court assumed those automotive parts were no longer in the Greenfield True Value when Rohner searched for them in December 2014 because they had been sold to customers in the meantime. But according to the print-out from the Sinns's inventory program as of the morning of February 7—the day the sale of

the store and inventory was finalized—there was only $3404 cost value in automotive parts in the store. Thus, even if the Sinns failed to remove any of the automotive parts (pursuant to their contract) and Wallace Auto sold the items, Wallace Auto's damages would be reduced by $3404.

To support its 30% reduction in Wallace Auto's claimed damages, the court implied there may have been a problem when the inventory data was imported from one system to another, noted there could have been some mistakes made by Rohner, and considered that the amount of time between the inventory list date and the date of the search meant some items could have been sold. While logical, none of these considerations was based on quantitative evidence actually presented at trial "sufficient to remove the issue of [the reduction of] damages from the realm of speculation." *Bushman v. Cuckler Bldg. Sys., a Div. of Lear Siegler, Inc.*, 421 N.W.2d 145, 148 (Iowa Ct. App. 1988), *rejected on other grounds by Chiafos v. Mun Fire & Police Ret. Sys. of Iowa*, 591 N.W.2d 199, 203 (Iowa 1999).

We reverse the district court's reduction in damages and remand for entry of an order awarding Wallace Auto $93,159.87 in damages for the Sinns's breach of contract.[10]

**2. Breach of Non-Compete Provision.**

Next, Wallace Auto challenges the district court's ruling the Sinns did not breach the non-compete provision in the purchase agreement. Wallace Auto maintains the court erred in its determination that the Sinns's delivery of lawn mowers purchased in its Creston store to the homes of customers within a ten-

---

[10] In doing so, we reject the Sinns's claim that Wallace Auto was entitled to only nominal damages for the Sinns's breach.

mile radius of the Greenfield store did not violate the provision. As a remedy, Wallace Auto requests a monetary award of damages in the amount of $7929.27 and asks that the period of the non-compete provision be extended "so that Wallace Auto is able to receive the full three-year benefit."

In response, the Sinns ask us to affirm the district court's ruling on the non-compete provision. In the alternative, they maintain that even if we find a breach, Wallace Auto failed to timely raise the issue of damages for a violation of the non-compete provision.

The provision at issue states:

For the consideration set forth above, to be paid at closing, Seller and Kent Sinn and Juliann Sinn in their individual capacities, shall not directly or indirectly engage in, and shall have no interest in any business, firm, person, partnership, or corporation, whether as an employee, officer, director, agent, security holder, creditor, consultant or otherwise, that engages in the sale of any types of items sold True Value stores within a ten (10) mile radius of Greenfield, Iowa at any time within three (3) years immediately following the closing date.[11]

Here, we are asked to interpret and construe the contractual terms chosen by the parties.[12] "Interpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect." *Dental Prosthetic Servs. Inc. v. Hurst*, 463 N.W.2d 36, 39 (Iowa 1990). Insofar as extrinsic evidence was presented at trial, we are allowed to consider it to "as an aid to interpretation when

---

[11] The parties disagree whether the final clause is missing a word, with Wallace Auto arguing the phrase is meant to be, "that engages in the sale of any types of items sold *in* True Value stores," and the Sinns arguing there is no error in the phrase as it is written in the contract. (Emphasis added.) For what it is worth, the district court agreed with Wallace Auto, stating it was "obvious to the court that there is a word omitted from the contract."

[12] While Wallace Auto urges us to view the non-compete provision "with more indulgence" because the agreement was between business owners who were also represented by counsel, *see Sutton*, 808 N.W.2d at 749–52, we note that we are not being asked to determine the enforceability of the parties agreement.

it throws light on the situation of the parties, antecedent negotiations, the attendant circumstances and the objects they were striving to attain." *Id.*

At trial, Kent Sinn agreed that the non-compete provision meant he could not "build a store within 10 miles of" the Greenfield True Value or "sell True Value items within 10 miles of" the Greenfield store. Insofar as Kent sells lawnmowers in his Creston store—more than twenty miles from the Greenfield store—all parties agree he is not in breach of the agreement. The question becomes whether his delivery of lawn mowers within the ten-mile radius somehow causes the sale to be improper. The non-compete provision is silent as to the Sinns's authority to deliver products, and we will not read additional terms into the contract. As noted, both parties were represented by counsel in their negotiation of the agreement.

Because we find no error in the district court's determination the Sinns did not breach the non-compete provision when they delivered lawn mowers to their customers' homes, we need not consider whether Wallace Auto properly pled its request for damages.

### 3. Appellate Attorney Fees.

Each party asks that we award them appellate attorney fees. Generally, attorney fees are not allowed unless authorized by statute or contract. *W.P. Barber Lumber Co. v. Celania*, 674 N.W.2d 62, 66 (Iowa 2003). Iowa Code section 625.22 provides, "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court *shall* allow and a tax as part of the costs a reasonable attorney fee to be determined by the court." (Emphasis added.) We have previously applied this section to an award of appellate attorney fees. *See e.g.*, *Fed. Land Bank of Omaha v. Woods*, 480 N.W.2d 61, 70 (Iowa 1992)

(concluding the prevailing party was "entitled to appellate attorney fees because the attorney fee language in the note does not prohibit such fees"); *Snyder v. Baker*, No. 15-0440, 2016 WL 6902322, at *3 (Iowa Ct. App. Nov. 23, 2016) (same).

Here, the purchase agreement provides:

> 7.1 INDEMNIFICATION BY SELLER: . . . .
> . . . .
> b. Any and all liabilities, loss, damages, deficiencies, judgments, claims or expenses, including reasonable attorneys' fees, relating to, arising out of, or resulting from, any inaccuracy in any representation or warranty, or non-fulfillment of any covenant, agreement or other obligation of Seller under this agreement or any agreement or instrument delivered pursuant to this agreement.
> . . . .
> 7.2 INDEMNIFICATION BY BUYER: Buyer shall defend, indemnify and hold Seller harmless from and against any and all liabilities, losses, damages, claims and expenses, including reasonable attorneys' fees, arising in connection with or resulting from any breach of warranty, misrepresentation or non-fulfillment of any agreement on the part of Buyer under this Agreement.

Based on the contractual language, Wallace Auto may recover reasonable attorney fees as related to their appeal of the breach-of-contract for the missing inventory, as they were both successful and the purchase agreement contemplates their receipt of "reasonable attorneys' fees . . . arising out of or resulting from . . . non-fulfillment of any convenant . . . of Seller."

We cannot say the same for the Sinns. Although the Sinns have been successful in their defense of the district court's ruling as to the non-compete provision, the attorney fees incurred did not "arise in connection with or resulting from any breach of warranty, misrepresentation or non-fullment of any agreement" by Wallace Auto.

We have nothing in the record before us to determine the appropriate amount of a "reasonable attorney fee" in this case; thus, we remand to the district court for the limited purpose of determining the award of reasonable fees incurred by Wallace Auto on appeal. *See NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 470 (Iowa 2010) ("When a contract contains a clear and express provision regarding attorney fees, the court's award must be for reasonable fees.").

**IV. Conclusion.**

We affirm the district court's ruling that the Sinns breached the purchase agreement by failing to provide $618,000 in inventory but did not breach the non-compete clause by delivering lawn mowers within the prohibited ten-mile radius. However, we reverse the court's reduction of damages, as the amount of the reduction is too speculative. We remand for the district court to enter an order awarding Wallace Auto $93,159.87 in damages and, after a hearing on the matter, reasonable appellate attorney fees incurred in the appeal of the damages award.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**